BETSY C. MAINIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHIVA STEIN, <br><br> Plaintiff, <br><br> v. <br><br> VARIAN MEDICAL SYSTEMS, INC., DOW R. WILSON, R. ANDREW ECKERT, DAVID J. ILLINGWORTH, JEAN-LUC BUTEL, ANAT ASHKENAZI, REGINA E. DUGAN PH.D., JUDY BRUNER, JEFFREY R. BALSER, M.D., PH.D., PHIL FEBBO, M.D., and MICHELLE LE BEAU, M.S., PH.D., <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Shiva Stein ("Plaintiff"), by her attorneys, makes the following allegations against Varian Medical Systems, Inc. ("Varian" or the "Company") and the members of the board of directors of Varian (the "Board" or "Individual Defendants," along with Varian, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed acquisition (the "Proposed Transaction") of Varian by affiliates of Siemens Healthineers AG ("Siemens"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff to enjoin the Proposed Transaction whereby Falcon Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Siemens Healthineers Holding I GmbH ("Holdco"), an affiliate of Siemens, will merge with and into Varian, with Varian continuing as the surviving corporation and as a direct wholly owned subsidiary of Holdco and an indirect wholly owned subsidiary of Siemens, in the Proposed Transaction for $177.50 in cash for each Varian share owned (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the Varian shareholders.

2. To convince Varian stockholders to vote in favor of the Proposed Transaction, on August 28, 2020, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the Securities and Exchange Commission ("SEC"). The Proxy Statement violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3. Defendants have failed to disclose certain material information necessary for Varian stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules

and regulations and rendering certain statements in the Proxy Statement materially incomplete and misleading.

4.     In particular, the Proxy Statement contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction. The same forecasts were used by Varian's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in conducting their valuation analyses in support of their fairness opinions. The Proxy Statement also contains materially incomplete and misleading information concerning certain financial analyses performed by Goldman Sachs.

5.     The material information that has been omitted from the Proxy Statement must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Varian stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.     This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.  All of the Defendants

conduct business and/or maintain offices in California. The corporate office of Varian is located at 3100 Hansen Way, Palo Alto, California 94304.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Varian is headquartered in this District.

**PARTIES**

10. Plaintiff has owned the common stock of Varian since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11. Varian is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in Palo Alto, California. Varian is, and at all relevant times hereto was, listed and traded on the NASDAQ Stock Exchange under the symbol "VAR."

12. Defendant Dow R. Wilson is the Company's President and Chief Executive Officer since 2012 and has been a member of the Board since that date.

13. Defendant R. Andrew Eckert is the Chairman of the Board and has been a member of the Board since 2004.

14. Defendant David J. Illingworth has been a member of the Board since 2011.

15. Defendant Jean-Luc Butel has been a member of the Board since 2017.

16. Defendant Anat Ashkenazi has been a member of the Board since 2018.

17. Defendant Regina E. Dugan, Ph.D. has been a member of the Board since 2013.

18. Defendant Judy Bruner has been a member of the Board since 2016.

19. Defendant Jeffrey R. Balser, M.D., Ph.D. has been a member of the Board since 2018.

20. Defendant Phil Febbo, M.D. has been a member of the Board since 2019.

21. Defendant Michelle Le Beau, M.S., Ph.D. has been a member of the Board since 2019.

22. The Defendants referred to in paragraphs 12-21 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

23. The Defendants referred to in paragraphs 11-21 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

*The Proposed Transaction*

24.   On August 2, 2020, Varian announced that it had entered into the Agreement and Plan of Merger (the "Merger Agreement"):

> PALO ALTO, Calif., Aug. 2, 2020 /PRNewswire/ -- Varian (NYSE: VAR) today announced that it has entered into a definitive agreement to combine with Siemens Healthineers AG (Frankfurt: SHL) in an all-cash transaction valued at $16.4 billion on a fully diluted basis. Under the terms of the agreement, which has been unanimously approved by Varian's Board of Directors, Siemens Healthineers will acquire all outstanding shares of Varian for $177.50 per share in cash, representing a premium of approximately 42% to the 30-day volume weighted average closing price of Varian's common stock as of July 31, 2020, the last trading day prior to the announcement of the transaction, and a premium of approximately 24% to the closing price of Varian's common stock on July 31, 2020.
>
> The combination will create a multi-disciplinary global healthcare leader with the most comprehensive cancer care portfolio in the industry. The combined company will offer an integrated platform of end-to-end oncology solutions to address the entire continuum of cancer care, from screening and diagnosis to care delivery and post-treatment survivorship. By bringing together the highly complementary diagnostic tools, imaging, radiotherapy and AI capabilities across both companies, Varian and Siemens Healthineers will lead the digital transformation of oncology healthcare, enabling more efficient diagnosis, increased treatment quality and access, personalized precision cancer care, and improved outcomes for millions of patients worldwide.
>
> "Today's announcement represents an important milestone in our company's history, and our Board is confident that this is the right path forward for Varian," said Dow Wilson, President and Chief Executive Officer of Varian. "In addition to delivering immediate and compelling value to our shareholders, the combination with Siemens Healthineers brings us even closer to realizing our transformative vision of a world without fear of cancer. Siemens Healthineers' innovative leadership in detection and diagnosis will extend our ability to serve clinicians and patients from the very first stage in the fight against cancer. And, we will be positioned to transform care for a greater number of patients worldwide."
>
> Wilson continued, "Varian's innovative and patient-centric culture has enabled us to become an iconic leader in radiotherapy and multi-disciplinary cancer care, with a trusted global brand and strong customer loyalty. Siemens Healthineers values our talented and engaged employees and recognizes the strength of the Varian brand, our cutting-edge portfolio, and the relationships we've nurtured. We are thrilled to partner with them to extend our renowned customer care to reach more patients

around the world. With Siemens Healthineers, we can accelerate our vision, meaningfully increase our patient care impact and broaden opportunities for our employees as part of a larger and more diversified organization."

Dr. Bernd Montag, CEO of Siemens Healthineers AG said, "With this combination of two leading companies we make two leaps in one step: A leap in the fight against cancer and a leap in our overall impact on healthcare. This decisive moment in the history of our companies means more hope and less uncertainty for patients, an even stronger partner for our customers, and for society more effective and efficient medical care. Together with Varian's outstanding and passionate employees, we will shape the future of healthcare more than ever before."

The transaction is expected to close in the first half of calendar year 2021, subject to approval by Varian shareholders, receipt of regulatory approvals and other customary closing conditions.

Varian has established strong brand recognition, and expects to continue to operate under the Varian name as an independent company within Siemens Healthineers following the completion of the transaction.

**Third Quarter Fiscal Year 2020 Financial Results**

In a separate press release issued today, Varian announced financial results for its third quarter fiscal year 2020.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Varian and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

*The Materially Misleading and Incomplete Solicitation Statement*

25. On August 28, 2020, Defendants caused the Proxy Statement to be filed with the SEC in connection with the Proposed Transaction. The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Forecasts*

26. The Proxy Statement discloses tables for the Management Case and a Management Sensitivity Case (the "Projections"). However, the Proxy Statement fails to provide material information concerning these financial forecasts, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. Proxy Statement at 52. These financial forecasts were also relied upon by the Company's financial advisor, Goldman Sachs, in rendering its fairness opinion.

27. With respect to the Projections, the Proxy Statement fails to provide: (i) the value of certain line items used to calculate (a) Adjusted Operating Earnings, (b) Net Income, (c) Adjusted EPS, (d) Adjusted EBIT, and (e) Unlevered Free Cash Flow, all non-GAAP measures; and (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 53-54.

28. The SEC has indicated that if the most directly comparable GAAP measure is not accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling information that is available without unreasonable effort, identify any unavailable information and disclose the probable significance of that information. A company is permitted to provide the projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to quantify all those items.

29. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial

measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific, non-GAAP financial measures (as Varian included in the Proxy Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherrypicking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

31. The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited Aug. 31, 2020) (emphasis added).

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL REGULATION (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Aug. 31, 2020); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited Aug. 31, 2020).

[3] *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101 (last visited Aug. 31,

32. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.[4]

33. Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

34. Thus, to bring the Proxy Statement into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

*Financial Analyses*

35. With respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose (i) Goldman's basis for applying price to forward earnings per share multiples of 23.5x to 28.5x to adjusted earnings per share of common stock estimates for each of the fiscal years 2022 to 2024; and (ii) inputs underlying the discount rate of 7.56%.

36. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the basis for Goldman Sachs's selection of the discount rate

---

2020). To be sure, there are other situations where Regulation G would not apply but are not applicable here.
[4] *Id.*

ranging from 8.00% to 9.00%; (ii) the basis for Goldman Sachs's selection of the range of perpetual growth rates ranging from 2.25% to 2.75%; and (iii) the total outstanding fully-diluted shares of Company common stock, as provided by the Company management, and the as-of date for the accounting of the outstanding common stock.

37.  With respect to Goldman Sachs's *Premia Analysis*, the Proxy Statement fails to disclose (i) the acquisitions observed by Goldman, (ii) the transaction values for the acquisitions; and (iii) the premia represented by the prices per share paid in the transactions.

38.  In sum, the Proxy Statement independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy Statement independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy Statement to garner votes in support of the Proposed Transaction from Varian shareholders.

39.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**FIRST CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act**
**and 17 C.F.R. § 244.100 Promulgated Thereunder)**

40.  Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

41.  Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. As set forth above, the Proxy Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

43. The failure to reconcile the numerous non-GAAP financial measures included in the Proxy Statement violates Regulation G and constitutes a violation of Section 14(a).

**SECOND CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

44. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

45. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

47. Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49. The Individual Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.

51. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

52. Varian is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

53. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### THIRD CAUSE OF ACTION
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Varian within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Varian, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Proxy Statement.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting

1  and/or gave their input on the content of those descriptions.

2        60.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of
3  the Exchange Act.

4        61.    As set forth above, the Individual Defendants had the ability to exercise control over
5  and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts
6  and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants
7  are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of
8  Individual Defendants' conduct, Plaintiff will be irreparably harmed.

9        62.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's
10 equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that
11 Defendants' actions threaten to inflict.

## RELIEF REQUESTED

13 **WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

14     A.    Preliminarily and permanently enjoining Defendants and their counsel, agents,
15 employees and all persons acting under, in concert with, or for them, from proceeding with,
16 consummating, or closing the Proposed Transaction, unless and until the Company discloses the
17 material information discussed above which has been omitted from the Proxy Statement;

18     B.    In the event that the proposed transaction is consummated, rescinding it and setting it
19 aside, or awarding rescissory damages;

20     C.    Awarding compensatory damages against Defendants, individually and severally, in
21 an amount to be determined at trial, together with pre-judgment and post-judgment interest at the
22 maximum rate allowable by law, arising from the Proposed Transaction;

23     D.    Awarding Plaintiff the costs and disbursements of this action and reasonable
24 allowances for fees and expenses of Plaintiff's counsel and experts; and

25     E.    Granting Plaintiff such other and further relief as the Court may deem just and
26 proper.

## DEMAND FOR JURY TRIAL

28 Plaintiff hereby demands a trial by jury.

1  DATED: August 31, 2020

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**

By:   */s/ Rachele R. Byrd*
    RACHELE R. BYRD

BETSY C. MANIFOLD
RACHELE R. BYRD
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

**Of Counsel**:

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Counsel for Plaintiff*

26655